IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
KENNETH A. SENOSKI         )
        Petitioner,        )
                           )
        v.                 )   Civil Action No. 05-41
                           )   Judge Donetta W. Ambrose
MIKE FISHER, ET AL.,       )   Magistrate Judge Caiazza
        Respondents.       )
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Kenneth A. Senoski be denied and that a certificate of appealability be denied.

**II. REPORT**

The Petitioner, Kenneth A. Senoski ("the Petitioner" or "Senoski"), a prisoner presently incarcerated at the State Correctional Institution at Houtzdale, has filed this Petition for Writ of Habeas Corpus pursuant to the provisions of 28 U.S.C. § 2254. He asserts a series of grounds for relief that the court will address *seriatim*.

**A. The Relevant Facts**

On April 22, 1995, three employees of the James Moving Company transported the personal property of Carol Dove ("Ms. Dove" or "Dove") into her new residence. The Petitioner, Kenneth Senoski, was an employee of the moving company. Sometime during the move he offered his services to Ms. Dove with respect to

certain repairs that she wanted performed at her new residence. On April 28, 1996, at approximately 10:30 p.m., Senoski returned to Dove's new residence and knocked on her door. Dove, expecting a friend, opened her door and observed Senoski standing on her porch. He informed her that he was there to discuss the repair job. Because she was expecting a friend, Dove told Senoski to call her later and arrange for a specific time. Leaving him standing on her porch, Dove attempted to retrieve a business card when Senoski charged into the house and attacked her with a knife. During a struggle that ensued, Dove knocked a dangling cigarette out of Senoski's mouth and unsuccessfully tried to burn him with the butt. Dove's screams then chased Senoski away. Following the altercation she immediately called the police who arrived and retrieved the cigarette butt that Dove forced from Senoski's mouth. As a result of the attack, Dove suffered multiple bruises and abrasions which required stitches.

In May of 1997, following a jury trial, Senoski was found guilty of the following criminal offenses: Aggravated Assault (two counts); Burglary; Criminal Attempt (Rape); Recklessly Endangering Another Person; and Criminal Mischief. On August 22, 1997, Senoski was sentenced to an aggregate term of imprisonment ranging from twenty-five to fifty years. Next, on September 2, 1997, Senoski filed a Motion for Modification or Reconsideration of Sentence. On November 14, 1997, the Motion was granted and

Senoski was re-sentenced to an aggregate term of imprisonment ranging from twelve and one-half to twenty-five years.

Senoski then filed a timely appeal of his sentence and a timely petition for relief under the Pennsylvania Post Conviction Relief Act. ("PCRA"). 42 Pa. Cons. Stat. §§ 9541-9546. In his collateral relief petition he raised ineffective assistance of counsel claims.

B. **Standard of Review**

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations. 28 U.S.C. § 2254. Specifically, a federal court must accord a presumption of correctness to a state court's factual findings  -which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining the implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

Next, a federal court may not issue the writ unless it

concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). The Supreme Court has determined that a federal habeas court making the unreasonable application inquiry should determine whether the state court's application of clearly established federal law was objectively unreasonable. Williams v. Taylor, 529 U.S. 362, 408 (2000). "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. *See also* Lockyer v. Andrade, 538 U.S. 63 (2003). These standards apply equally to mixed questions of fact and law, such as whether trial counsel provided effective assistance. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000), *cert. denied*, 532 U.S. 980 (2001). Finally, where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

4

## C. Ineffective Assistance of Counsel

Senoski's argument is based on ineffective assistance of counsel claims. The Supreme Court has formulated a two-part test for determining if counsel rendered constitutionally ineffective assistance: 1) whether counsel's performance was unreasonable; and 2) whether counsel's unreasonable performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984)). To determine whether counsel performed below the level expected from a reasonably competent attorney, a court must judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Id. at 690. A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof. United States v. Cronic 466 U.S. 648, 658 (1984).

The first prong of the Strickland test requires a defendant to establish that an attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. That said, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689. The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong of the test requires a defendant to demonstrate that counsel's errors deprived him or her of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694 (emphasis added). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id. Having reviewed the relevant law, the Petitioner's claims will be reviewed under the preceding analysis.

   a) Scientific Testing of the Cigarette Butt

Senoski first claims that his trial counsel was ineffective because he: 1) failed to challenge whether the DNA testing method performed on the saliva of the cigarette butt was generally accepted in the scientific community at the time of trial; 2) failed to challenge the statistical evidence calculated from the DNA testing results; and 3) failed to challenge the relevancy and materiality of the cigarette butt.

Addressing the first issue, the Commonwealth used the

6

Polymerase Chain Reaction ("PCR") method of DNA to determine whether the Defendant was among one in 8000 people to have the same saliva as that found on the cigarette butt. In determining the admissibility of this evidence, the Pennsylvania courts used the test set out in <u>Frye v. United States</u>, 293 F. 1013 (D.C. Cir. 1923)(in order for scientific evidence to be admissible, the theory and technique underlying the evidence must have gained general acceptance in the scientific community). As recognized in the trial court's PCRA opinion, at both the pretrial hearing and during trial, evidence was presented showing that PCR testing had gained general acceptance in the scientific community (Commw. Ex. 38 at 2-3). Senoski has not included any evidence in this record to rebut this finding. Parenthetically, the Petitioner has not shown that he was prejudiced by the introduction of the DNA evidence. Ms. Dove identified her attacker as Senoski; therefore, the saliva evidence was cumulative at best. Finally, there is no basis in this record to conclude that the jurors' verdict rested solely on the basis of the scientific evidence. Senoski presented an alibi defense but the jury did not believe his story. Instead, the fact-finder accepted the testimony of Ms. Dove. Thus, defense counsel did not render ineffective assistance by failing to question the scientific acceptance of PCR testing.

Senoski next argues that trial counsel was ineffective because he failed to challenge the statistical evidence revealed

by the DNA testing results. This claim is belied by the record which shows that defense counsel thoroughly cross-examined the forensic expert during trial. Moreover, as already stated, Senoski has not shown how he was prejudiced in light of the victim's independent identification of Senoski as her attacker. Again, Senoski has not shown that he is entitled to federal habeas corpus relief with respect to this claim.

Finally, Senoski claims that defense counsel was ineffective because he failed to challenge the relevancy and materiality of the cigarette because it did not have any of the victim's blood on it. Specifically, Senoski claims that Dove testified that her hands were cut by Senoski's knife and that she was bleeding profusely before she grabbed the butt out of Senoski's mouth. He contends that the cigarette butt found by the police could have been tracked into Dove's house during the move.

The trial court held that the cigarette was admissible because Dove testified that she knocked a butt from her attacker's mouth and it was the only one recovered from her residence. More importantly, the trial court ruled that defense counsel was not ineffective because Senoski failed to show that there was a reasonable likelihood that the verdict would have been different had defense counsel challenged the witnesses with respect to the lack of Dove's blood on the cigarette. In this court, the Petitioner has failed to show that the Pennsylvania

Courts' determination of this claim is contrary to, or an unreasonable application of, constitutional law as set out by the United States Supreme Court. Accordingly, this issue likewise lacks merit.

    b) <u>Admission of the Petitioner's Bloody Shirt</u>

Next, Senoski argues that appellate counsel was ineffective because he failed to raise the issue that trial counsel was ineffective because he entered Senoski's shirt into evidence. Significantly, the shirt was smeared with only Senoski's blood. In reviewing this claim, the trial court found that defense counsel had a reasonable trial strategy for placing the shirt into evidence because it contained only Senoski's blood and the evidence adduced at trial showed that the victim, Ms. Dove, was bleeding profusely. Thus, the evidence tended to support Senoski's defense; *i.e.*, that he was not the attacker. Consequently, the trial court found that counsel did not provide ineffective assistance.  Again, Senoski has not shown that this determination is contrary to, or an unreasonable application of, clearly established federal or constitutional law.

    c) <u>Alibi Witnesses</u>

Next, Senoski claims that his trial counsel was ineffective for failing to present his alibi defense. Specifically, he argues that counsel was ineffective because he failed to question witnesses regarding his Friday night routine. Again, this claim

9

is belied by the record. During trial, defense counsel called John Cherrington who testified that it was Senoski's routine to visit the Pleasant Bar in Pleasant Hills on Friday nights and stay from 7:30 p.m. until 10:30 p.m. (Trial Tr. at 233-235). Senoski's mother, Pauline Bartinkas, testified that her son returned home at 10:45 or 10:40 p.m. on April 28, 1995. She explained that because she had purchased a new car, Senoski was required to return her keys in her purse before she went to bed. She testified that the Petitioner returned home, took the dog out and played with him, washed and then viewed the 11:00 news with her. She further stated that he came home around 11:00 because that was his routine. (Trial Tr. at 254-263). This claim lacks merit.

   d) <u>Back Injuries and Back Brace</u>

Next, Senoski claims that his trial counsel rendered ineffective assistance by failing to present evidence related to injuries that he sustained in a 1980 automobile accident. As a result of the crash Senoski supposedly was required to continually wear a back brace. Apparently, Senoski is arguing that because he wore a back brace, he could not have physically attacked Ms. Dove. Again, this argument lacks merit.

First, the trial court concluded that because Senoski had not demonstrated that his condition precluded the events as described by the victim, he had not demonstrated any reasonable

10

probability that the outcome of the trial would have been different. Second, and more significantly, the court concluded that trial counsel's strategy in failing to argue his condition was readily apparent because Senoski worked as a laborer in a moving company -a physically demanding job. To argue that he was physically incapable of attacking Ms. Dove would have raised significant credibility issues.

With those facts as a backdrop, Senoski has failed to show that the state court's determinations are contrary to, or an unreasonable application of, clearly established federal or constitutional law as determined by the United States Supreme Court. Consequently, he has not demonstrated that he is entitled to federal habeas corpus relief with respect to this claim.

## D. **Illegal Sentence**

Senoski next claims that his sentence is illegal because the sentencing court failed to merge the sentence for aggravated assault into the sentence for attempted rape. The Petitioner's merger claim invokes the protections of the Double Jeopardy Clause of the Fifth Amendment.

The Fifth Amendment to the Constitution provides in relevant part as follows: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const.

Amend. V.[1]  The guarantee against double jeopardy consists of three separate constitutional rights: 1) it protects against a second prosecution for the same offense after acquittal; 2) it protects against a second prosecution for the same offense after conviction; and 3) it protects against multiple punishments for the same offense. Gillespie v. Ryan, 837 F.2d 628, 632 (3d Cir.) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)), cert. denied, 488 U.S. 833 (3d Cir. 1988).

The Double Jeopardy Clause prohibits more than one punishment for the same offense. The Supreme Court described the perimeters of the Double Jeopardy Clause in Blockburger v. United States, 284 U.S. 299 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Blockburger, 284 U.S. at 304. In Missouri v. Hunter, 459 U.S. 359, 366 (1983), the Supreme Court defined further the perimeters of the Double Jeopardy Clause by finding that it does no more than prevent the sentencing court from prescribing a greater punishment than the legislature intended. Where a legislature

---

1 The Fifth Amendment proscription on multiple punishments for the same offense is binding on the States through the Fourteenth Amendment. North Carolina v. Pearce, 395 U.S. 711 (1969); Benton v. Maryland, 395 U.S. 784 (1969).

specifically authorizes a cumulative punishment under two statutes, the trial court may impose a cumulative punishment in a single trial. Id.²

That said, a multiple punishment analysis under the Double Jeopardy Clause requires a court to review the substantive criminal law. Gillespie, 837 F.2d at 628. Also, a state court's interpretation of a state criminal statute is binding on a federal court reviewing the merits of a habeas corpus petition. Id. at 632 ("Absent extraordinary circumstances, the state courts will have the final word on the substantive criminal law.")."

Here, Senoski claims that his sentence is illegal because the sentencing court failed to merge the sentence for aggravated assault, 18 Pa. Cons. Stat. § 2702(a)(4), into the sentence for attempted rape, 18 Pa. Cons. Stat. § 901(a). Under 18 Pa. Cons.

---

2. The Pennsylvania common law doctrine of merger was developed before and independently of double jeopardy principles. However, in 1989, the Supreme Court of Pennsylvania redefined the merger doctrine in the companion cases of Commonwealth v. Williams, 521 Pa. 556, 559 A.2d 25 (1989) and Commonwealth v. Weakland, 521 Pa. 353, 555 A.2d 1228 (1989), wherein it adopted a two-part test for merger to occur: 1) the same facts must support both crimes; and 2) the merged offense must be a "lesser included offense" of the greater crime.  In 1994, the Supreme Court of Pennsylvania abrogated the "same facts" prong of the merger test in Commonwealth v. Anderson, 538 Pa. 574, 581, 650 A.2d 20, 23, order modified on denial of reargument, 539 Pa. 476, 653 A.2d 615 (1994). Thus, since 1994, the Pennsylvania merger analysis is the same as that required under the Double Jeopardy Clause; the operative consideration in both is whether the elements of the offenses are the same or different. If the elements of the lesser crime are all included within the elements of the greater crime, and the greater offense includes at least one additional element that is different, the sentences merge; if both crimes require proof of at least one element that the other does not, the sentences do not merge. Id., 650 A.2d at 24.

13

Stat. § 2702 (a)(1), an accused can he found guilty of aggravated assault if he or she attempts to cause serious bodily injury to another, or causes an injury intentionally, knowingly or recklessly under circumstances manifesting an extreme indifference to the value of human life. Where the injury actually inflicted does not constitute serious bodily injury, a verdict of aggravated assault satisfies the statutory requirements if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury; criminal intent may be proved by direct or circumstantial evidence. Commonwealth v. Alexander, 477 Pa. 190, 194 (1978).

With respect to the attempted rape conviction, the Pennsylvania Crimes Code, 18 Pa. Cons. Stat. § 901(a), defines attempt as follows: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." Rape is defined as engaging in sexual intercourse with another, not one's spouse, by forcible compulsion or by a threat of forcible compulsion. 18 Pa. Cons. Stat. §§ 3121(1) and (2).

Here, the evidence shows that Senoski charged into the house and grabbed Dove and told her they were going to engage in sexual intercourse -whether or not she consented. He proceeded to rip off her clothes and pinned her down while attempting to engage in a sexual act. The evidence which shows that Senoski threatened

14

Dove then pinned her down was sufficient to support the conviction for attempted rape. <u>Commonwealth v. Martin</u>, 307 Pa. Super. 118, 127 (1982). Next, the evidence of Senoski's actions which shows that he struck and cut Dove with a knife supported his conviction of aggravated assault. Based on the evidence that unfolded at trial, each of the crimes required proof of a separate set of facts and, therefore, the sentence of the trial court had a sound basis in the law.

With respect to this claim, Senoski has failed to show that the Pennsylvania Courts' determination of this claim is contrary to, or an unreasonable application of, constitutional law as set forth by the United States Supreme Court. Accordingly, he has not demonstrated that he is eligible for federal habeas corpus relief.

### E. The State Courts' Misunderstanding Improper Testimony

Finally, Senoski's claims that the state courts misunderstood "improper testimony". However, nowhere in his filings does he explain the basis for this claim. A federal habeas petitioner has the burden of setting out sufficient facts to support each claim. Moreover, Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254, expressly provides, in part, that the petitioner "shall set forth in summary form the facts supporting each of the grounds" specified in the petition. Bald assertions and conclusory allegations do not afford a

15

sufficient ground to provide habeas relief. <u>Mayberry v. Petsock</u>, 821 F.2d 179, 185 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987). Here, Senoski's failure to sufficiently identify the facts upon which his claim is based precludes habeas relief. <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 298 & n.12 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).

### F. **Certificate of Appealability**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996), signed into law on April 24, 1996, included several major reforms to the federal habeas corpus laws. Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas corpus petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." The Petitioner has not made a showing that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. **CONCLUSION**

It is recommended that the Petition for Writ of Habeas Corpus filed by Kenneth A. Senoski be denied and that a certificate of appealability be denied.

16

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 20, 2006. Responses to objections are due by March 30 , 2006.

*Francis X. Caiazza,*
FRANCIS X. CAIAZZA
United States Magistrate Judge

March 3, 2006

cc:     The Honorable Donetta W. Ambrose
        United States District Judge

        Kenneth A. Senoski
        DJ-8862
        SCI Houtzdale
        P.O. Box 1000
        Houtzdale, PA 16698-1000

        Ronald M. Wabby, Jr.
        Office of the District Attorney
        Appeals/Post Conviction
        401 Allegheny County Courthouse
        Pittsburgh, PA 15219